Joseph Norman FANNIN and Bituminous Casualty Corporation, Plaintiffs,

v.

CHESAPEAKE AND OHIO RAILWAY COMPANY and American-Saint Gobain Corporation, a corporation, Defendants,

v.

PITTSBURGH PLATE GLASS COMPANY, a corporation, Third-Party Defendant.

Civ. A. No. 61–775.

United States District Court
W. D. Pennsylvania.
April 5, 1962.

James Manley, of Burns & Manley, Pittsburgh, Pa., for plaintiffs.

V. C. Short, Pittsburgh, Pa., for American-St. Gobain Corp.

E. V. Buckley, of Mercer & Buckley, Pittsburgh, Pa., for Chesapeake & Ohio R. Co.

Weis & Weis, Pittsburgh, Pa., for Pittsburgh Plate Glass.

WILLSON, District Judge.

In this diversity action the defendant, Chesapeake and Ohio Railway Company (hereinafter referred to as C & O) has filed a motion to dismiss the complaint and for summary judgment in its favor. It assigns three reasons:

1. This Court lacks jurisdiction over the C & O.

2. This Court lacks venue under 28 U.S.C.A. § 1391 because plaintiff, Joseph Norman Fannin, is admittedly a citizen of Kentucky and plaintiff, Bituminous Casualty Corporation, is a citizen of Illinois, and neither of the defendants are residents or citizens of this judicial district.

3. The Court does not have jurisdiction over the subject matter.

The reason back of No. 3 says the defendant is that the accident occurred in the State of Kentucky and is barred by the Kentucky Statute of Limitations since under the law of Kentucky an action for personal injuries must be instituted within one year of the occurrence and the amended complaint alleges that the cause of action arose on December 14, 1960, and the summons shows that the case was instituted on January 8, 1962, more than one year thereafter.

It is noticed that the motion is double barreled in that it combines a motion for dismissal under the Federal Rules of Civil Procedure, Rule 12(b) (2) and (3) which attack the jurisdiction and the venue with Rule 12(b) (6), 28 U.S. C.—failure to state a claim upon which relief can be granted. It is believed that the motion is proper as stated even though matters outside the pleadings are presented. Under Rule 12(d) the defenses 1 through 7 in subdivision (b), when made by motion shall be heard and determined before trial unless the court defers the motion until the trial. A hearing has been held at which time counsel stipulated that the two affidavits submitted in support of the motion by the C & O and the deposition submitted in opposition to the motion by the plaintiffs shall be the basis of the fact findings which

are to be made by the Court on the issue of doing business within this jurisdiction.

From the complaint, the affidavits and the deposition, the facts may be summarized as follows:

The individual plaintiff, Joseph Norman Fannin, is a citizen of the State of Kentucky. The corporate plaintiff, Bituminous Casualty Corporation, is a citizen of Illinois. The C & O was organized and exists under the laws of the State of Virginia and its legal domicile is in the City of Richmond but its principal office is in the City of Cleveland, Ohio. It, however, maintains general offices in the Cities of Huntington, West Virginia and Detroit, Michigan. The purposes for which the defendant C & O are organized and the business in which it is at all times mentioned has been and is the carriage of passengers and freight within the States of Virginia, West Virginia, Kentucky, Ohio, Illinois, Michigan and elsewhere. It is not incorporated or domesticized under the laws of the State of Pennsylvania nor is it registered nor has it authority to transact business under the laws thereof nor has it been a citizen or resident of the State of Pennsylvania. It owns no railroad tracks in Pennsylvania nor has it carried passengers or freight within Pennsylvania except, of course, under the Rules of the Interstate Commerce Commission when its trains are combined with other carriers and pass within Pennsylvania.

Plaintiff was injured at Ashland, Kentucky while unloading merchandise from a freight car designated as ATSF 13851 and which contained glass which had been loaded at Clarksburg, West Virginia and was consigned to American-Saint Gobain Corporation at Parkersburg, West Virginia, at which point it was reconsigned by American-Saint Gobain Corporation to the ultimate consignee, Fannin Glass and Paint Company at Ashland, Kentucky. The Baltimore and Ohio Railroad Company received the car at Clarksburg, West Virginia and delivered it to the C & O at Huntington, West Virginia from which the C & O carried it to the consignee in Kentucky. No act or omission of the C & O giving rise to the injuries complained of in this suit occurred within the Commonwealth of Pennsylvania.

Without enumerating all the things the C & O does not do in Pennsylvania as an operating railroad, it is best to refer to the affidavits and deposition to determine what it does do in this State. It rents 1,378 square feet of office space at No. 3 Gateway Center, Pittsburgh, Pa. It employs nine people whose headquarters are the office. The lease for the office space was executed in Huntington and the rent and the salary of the employees is paid from either Huntington or Cleveland.

The witness whose deposition was taken is Roland L. Schilke. He is the Freight Traffic Manager and has jurisdiction over five general agencies, that is in the Cities of Buffalo, Toledo, Cleveland, Columbus and Pittsburgh. The activities of the office are the soliciting of carload business for the C & O. The members of the office force in Pittsburgh contact customers in Pennsylvania and solicit their business. A large part of the work is done by telephone, their being four telephone lines in the Pittsburgh Office. Many business establishments in the Western Pennsylvania area are contacted by this office force. The largest are United States Steel, Westinghouse, Jones & Laughlin, Bethlehem Steel, Alcoa and Koppers Company. The witness indicated that any business houses that have car load business or ship in interstate commerce are potential customers of this railroad. There is a similar office in Philadelphia doing a similar type of activity. Hundreds of car loads of freight business are secured by the C & O in a years time by virtue of the Pittsburgh employees. However, those employees do not make any contracts to ship over the C & O lines. The customers are simply contacted indicating a service offered by the railroad together with information on rates. However, complaints as to freight service, delays, etc. are taken by the Pittsburgh employees for investigation throughout the line

of the railroad. One automobile for the use of the freight traffic manager is leased by the railroad and is used in the business of contacting customers. Three employees own their own automobiles and travel about the territory which in Pennsylvania comprises about the western half of the State and are reimbursed for their traveling expenses. The staff of nine is composed of three salesmen just mentioned, one woman stenographer, three men clerks, the Freight Traffic Manager, Roland L. Schilke, and a General Agent whose duties are in general equivalent to that of a "head salesman". In addition to what might be termed a solicitation or contact of customers for business, the three clerks in the office answer by telephone, giving rate information to prospective shippers and the office force maintains a careful record of freight originating in Pennsylvania which is carried on the C & O after being picked up in the State of Ohio or West Virginia, and records the amount of freight coming into Pennsylvania which has passed over the C & O lines in another state.

The service of the complaint in this action on the C & O was made by a Deputy United States Marshal for this district "by handing to and leaving a true and attested copy thereof with Bruce Leasure, Chief Clerk at place of business, #3 Gateway Center, Pgh., Pa" as indicated on the return of service.

■ There is thus presented a clear cut issue in this civil action as to whether the C & O, a foreign interstate railroad corporation, is present in this jurisdiction and thus suable in this judicial district under the venue statute and the due process clause of the Constitution. It is conceded that the cause of action for which suit is brought did not arise in Pennsylvania. Moreover, the cause of action did not arise out of any activity carried on in the State of Pennsylvania by the C & O. It is to be noticed also that the issue presented is not concerned with substituted service under the business corporation law of Pennsylvania. (15 P.S. § 2852–1011)

Counsel for each of the parties filed briefs which have been of material help because the authoritative decisions on the point at issue are cited and discussed. Plaintiffs contend that the factual situation presented is one of a "solicitation plus" which is sufficient to permit suit here, but this Court has come to the conclusion that, under the facts in the instant case, the authoritative decisions require that the motion be granted.

The decision of the Supreme Court of Pennsylvania, Rufo v. Bastian-Blessing Co., 405 Pa. 12, 173 A.2d 123 (1961), settled the state law as to the circumstances under which a foreign business corporation could be sued in Pennsylvania when unregistered to do business by using substituted service upon an officer of the Commonwealth. Judge McIlvaine's decision in Saccoccia v. Stough, 198 F.Supp. 169 (W.D.Pa., 1961), followed the Rufo ruling and his decision is the law of this District on the same subject matter. These decisions hold that when the act or omission occurs within the state, then if the corporation has minimal contacts within the forum state for the purpose of realizing a pecuniary benefit, service is sufficient under the business corporation law of Pennsylvania.

■ A reference to 28 U.S.C.A. § 1391, the venue statute, shows that a corporation may be sued in the judicial district in which it is incorporated or licensed " * * * or is doing business". Olberding v. Illinois Central R. Co., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953), teaches that the venue statute supersedes state law and that lack of venue can always be raised in the Federal courts. But as has been stated in the instant case, service was made upon the corporation at its place of business within this judicial district and plaintiffs seek to defend such service on the ground that the C & O is actually present and doing business within Pennsylvania within the full meaning of the phrase "doing business" as defined in the decisions. Because it is doing business in this judicial district, plaintiff says the service is good, whereas.

the C & O says that its business here, if any, amounts to a mere solicitation only.

An early decision, Green v. Chicago, B. & Q. R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916 (1907), is authority for the proposition that generally speaking an interstate railroad does not do business within a foreign state by the solicitation only of either passenger or freight business. The Court said at page 533, 27 S. Ct. at page 596:

"The business shown in this case was in substance nothing more than that of solicitation."

It is believed that two later cases, International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) point the way to the correct decision on the instant motion. International holds that when the subject matter of the suit arises within the forum state then but minimal contacts are required in order to find "doing business". It is observed that the facts in the International case were under the minimal contact doctrine but because the operative facts occurred in the State of Washington, the foreign corporation was suable in Washington and such a suit was in compliance with the due process clause of the 14th Amendment. In the Perkins case the factual situation simply was that the business of the corporation was being carried on in the State of Ohio through the corporation president who maintained an office in that State, and in that situation the place where the cause of action arose was unimportant to the decision as the corporation was actually doing business within the meaning of the venue statute.

It is to be stressed that in Perkins the Supreme Court said at page 445, 72 S.Ct. at page 418:

"The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case."

The Supreme Court not having departed from its ruling in Green v. Chicago, B. & Q. R. Co., in the International and Perkins cases, there must be something more than mere solicitation for a company to be "doing business" in this forum where the cause of action arose outside of the state. Judge Grim's decision in Moore v. Atlantic Coast Line R. Co., 98 F.Supp. 375 (E.D.Pa., 1951), recognizes the validity of the Green case and the "Solicitation Plus" doctrine. A comparison of Judge Grim's decision with the instant case clearly shows additional activities that satisfies the "solicitation plus" doctrine and persuaded him to find the Atlantic Coast Line doing business in the Eastern District of this State. Chief among those additional activities were the solicitation of passenger traffic, the receiving of monies for the purchase of passenger tickets and the processing of passenger complaints. Also, Judge Grim stressed the fact that the Atlantic Coast Line dining and tavern cars operating on trains passing through Pennsylvania were leased to the Pennsylvania Railroad Company while on its lines but the car waiters and stewards on such cars were paid by the defendant and the defendant purchased all provisions for such cars and retained all receipts for meals and beverages served.

It is apparent that the C & O carries on in this judicial district a continuous and effective program of solicitation. As a result it secures some thousands of freight car loads worth of business for the railroad each year. But it is also my view that solicitation is nevertheless still only solicitation even though it is made effective by nine employees, office space, telephones, automobiles and business records. None of the decisions say that solicitation must be minimal. Compare also, Murray v. Great Northern Railway Co., 67 F.Supp. 944 (E.D.Pa., 1946) and Fiorella v. Baltimore & O. R. Co., 89 F. Supp. 850 (E.D.Pa., 1950).

The complaint against the C & O will be dismissed for lack of venue. The other reasons advanced in the motion are not reached.