102 N.J. Super. 143 (1968)
245 A.2d 517
CORPORATE DEVELOPMENT SPECIALISTS, INC., PLAINTIFF-APPELLANT,
v.
WARREN-TEED PHARMACEUTICALS, INC., A SUBSIDIARY OF ROHM & HAAS COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted after Remand June 18, 1968.
Decided July 15, 1968.
*145 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Mark D. Larner argued the cause for appellant (Messrs. Budd, Larner, Kent & Gross, attorneys).
Mr. Michael F. Spicer argued the cause for respondent (Messrs. Jamieson, Walsh, McCardell & Moore, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
In this action by a New Jersey corporation for breach of contract against a Delaware corporation with principal place of business in Ohio, we remanded for the taking of testimony to supplement the affidavits on the basis of which the Law Division had granted a motion to dismiss the action for lack of jurisdiction over defendant, and for findings of fact thereon. 99 N.J. Super. 493 (Law Div. 1968). The remand has been executed, additional testimony having been taken and fact-findings made. We herewith determine the appeal on the basis of the entire record, as thus expanded, and the original and supplemental briefs filed by the parties.
We incorporate our former opinion herein by reference, to avoid repetition of those facts established prior to the remand and the limited exposition of the applicable law set forth therein.
*146 The origination of the transaction giving rise to this action is material to our determination of the appeal, and we relate the undisputed facts pertaining thereto developed on the remand.
Plaintiff, a New Jersey corporation with principal office in Newark at the time the contract in suit was negotiated, was in the business of sale, merger and acquisitions of corporations in the health and allied fields. Prior to January 14, 1966 Mr. Hirschberg, head of the plaintiff corporation, had had some discussions with defendant's people in reference to selling defendant a business. Thereafter Mr. Workman, associated with defendant, telephoned Hirschberg and arranged to meet him in New York City, where, on the date mentioned, they discussed defendant's interest in selling Phar-Med, a small company it owned situated in Michigan, and the possibility of plaintiff effecting such a sale.
Workman tried to reach Hirschberg at Newark by telephone January 27, 1966, but was told he was in Los Angeles, and called him there. The sale of Phar-Med was discussed again. Hirschberg said plaintiff would require a retainer of $500 a month for three months while attempting to find a purchaser, with the understanding it would be paid an additional $3,500 if it were successful. This arrangement was agreed to, and was confirmed by a letter from defendant dated January 28, 1966 (presumably from Columbus, Ohio) to plaintiff's Newark office.
From January 28, 1966 through May 27, 1966, there was voluminous correspondence between the parties relating to the matter, all of this being conducted between the respective offices of the parties in Columbus, Ohio and Newark, New Jersey. In the course of plaintiff's efforts to find a purchaser, it had correspondence with 22 firms, all of this being to and from the Newark office. All of plaintiff's work in attempted performance of the contract was done at Newark, including a search through some 2,000 names in plaintiff's files of potential prospects for the purchase of a small pharmaceutical enterprise.
*147 The trial judge found that there was no "agreement or understanding" between the parties as to where it was contemplated that plaintiff would perform the retainer contract. As to this we disagree. We conceive there is every probability from the proofs that defendant realized at all times that all or most of plaintiff's efforts to perform the contract would be expended at or out of its Newark office, and we so find. The fact that on May 1, 1966 plaintiff opened a branch office in New York City (which later became its main office) does not derogate from the foregoing.
From at least October 1962 to the time of the defendant's transaction with plaintiff defendant had employed from three to six full-time salesmen operating for it in New Jersey. Testimony by two of these salesmen showed the following. Defendant gives these men a five-day training program. One such program was conducted in New Jersey; others have been given out of the State. Training materials are sent the men by defendant addressed to their homes in New Jersey. The home office provides the men with a business card giving their name, home address and telephone number, and also the name of defendant, with its Columbus address, as well as the name of its parent, Rohm & Haas (a foreign corporation authorized to do business in New Jersey). Defendant reimburses the men for telephone calls made in connection with Warren-Teed business and pays their hotel and gasoline expenses. Their compensation is by straight salary plus commission. The salesmen solicit business from physicians. Defendant furnishes the men with reprints of advertisements of its products to use in their solicitations. It is inferable from the proofs, and we so find, that these men are exclusive representatives of defendant in the state and handle no other accounts. All orders obtained by the salesmen are subject to acceptance at the home office, but rarely is an order rejected. The company fills the order by mailing the product directly to the customer in New Jersey.
Defendant's gross sales nationally from 1964 to 1966 ranged from about $6,600,000 to $7,056,000 annually. Gross *148 sales in New Jersey ran from about $90,000 to $101,000 annually. The New Jersey salesmen accounted for about $55,000 of this. Defendant places advertisements in national periodicals circulating in New Jersey and conducts direct promotional mailing to the New Jersey trade.
Rohm & Haas, the defendant's parent, has some common officers and directors with defendant. Otherwise their respective business operations are entirely separate and distinct.
We approach the question whether the service of process on defendant by mail out of the State in the manner permitted by R.R. 4:4-4(d) and the exercise of in personam jurisdiction over it by this State in this action is offensive to federal due process on the facts stated above and in the remand opinion.
Our cited practice rule purports to vest our courts with jurisdiction over foreign corporations to the outer limits permitted by due process. Roland v. Modell's Shoppers World of Bergen Cty., 92 N.J. Super. 1 (App. Div. 1966). Those limits have not yet been staked out by the United States Supreme Court by concrete criteria readily applicable to all cases, whether in terms of the relationships and contacts of the foreign corporation with the forum state, of the connection of the cause of action involved with any of those relationships, or otherwise. That court has to date provided no more specific guideline as to the requirements of federal constitutional due process than these expressions in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945): "* * * [D]ue process requires only that [the foreign defendant] have certain minimum contacts [with the forum] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice'" (at p. 316, 66 S.Ct., at p. 158); "Those demands [of due process] may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there" (at p. 317, 66 S.Ct., at *149 p. 158). See also McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (noting the steady trend "toward expanding the permissible scope of state jurisdiction over foreign corporations and other non-residents," at p. 222, 78 S.Ct., at p. 201); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), with its cautionary note; Perkins v. Benquet Consol. Min. Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) and J.W. Sparks & Co. v. Gallos, 47 N.J. 295 (1966).
Chief Justice Traynor of the California Supreme Court has in Fisher Governor Company v. Superior Court, 53 Cal.2d 222, 1 Cal. Rptr. 1, 347 P.2d 1, 3 (Sup. Ct. 1959), provided a useful catalogue of some of the considerations which may pertinently be weighed in the assessment of due process in this area. Those so listed which are or may be relevant here are: (a) the interest of the state in providing a forum for its residents; (b) the relative availability of evidence and the burden of prosecution and defense in one place rather than another; (c) the ease of access to an alternative forum; and (d) the extent to which the cause of action arose out of defendant's local activities. To these must be added, for present purposes: (a) the substantiality of business activities of defendant in the State and how systematic and continuous they are; see Essential Const. Co. v. Royal Concrete Fireproofers, 84 N.J. Super. 289 (App. Div. 1964); cf. Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co., 304 F.2d 915 (1 Cir. 1962), as well as (b) the independence or exclusivity of its selling agents in the state in relation to the defendant, Fisher Governor Company v. Superior Court, supra; and (c) whether any isolated or casual activities of the defendant have caused expectable consequences of significant concern in the state, see Haldeman-Homme Mfg. Co. v. Texacon Industries, Inc., 236 F. Supp. 99 (D.C. Minn. 1964).
In the present case the significant issues argued on the remand are: (a) whether the nature and volume of defendant's sales and advertising activities in this State are sufficient *150 alone to vest jurisdiction, the cause of action sued upon not being related thereto; (b) whether the factors of the contemplated performance of the contract in this State and plaintiff's status as a domestic corporation justify assertion of jurisdiction; (c) whether the combination of the defendant's sales "presence" here and the contemplated performance by a New Jersey corporation-plaintiff of the contract here, in the light of any other recognized and applicable criteria, is sufficient in totality to justify assertion of jurisdiction.
We have found no reported case essentially like this one in all material respects. We have already in the remand opinion determined that the fact alone that the cause of action maintained did not arise out of defendant's sales activities in New Jersey is not per se a sufficient basis to deny the assertion of jurisdiction. (99 N.J. Super., at p. 497.)
Returning to the statement of issues projected above, we consider first to what extent jurisdiction may be posited on defendant's sales and related commercial activities in New Jersey. Restatement of Law, 2d, Conflict of Laws (1967 Proposed Official Draft), § 47, deals with jurisdiction over foreign corporations doing business in the state under two subsections: (1) where the cause of action arises from the business and (2), where it does not. These read:
"(1) A state has power to exercise judicial jurisdiction over a foreign corporation which does business in the state with respect to causes of action arising from the business done in the state.
(2) A state has power to exercise judicial jurisdiction over a foreign corporation which does business in the state with respect to causes of action that do not arise from the business done in the state if this business is so continuous and substantial as to make it reasonable for the state to exercise such jurisdiction."
Comment (a) thereunder defines "doing business" in a manner more flexible than traditional concepts developed before the appearance on the scene of the "minimum contacts" notion of due process.[1] The definition reads:
*151 "a. What constitutes doing business. Doing business is doing a series of similar acts for the purpose of thereby realizing pecuniary profit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts."
It would appear clear that defendant's activities in New Jersey through its sales agents meet the Restatement definition. What is less clear, however, is whether that business is so "substantial" (it is certainly fully continuous) as to make it "reasonable," within the meaning of Restatement, 2d, § 47 (2), for New Jersey to exercise jurisdiction in respect of a non-related cause of action. No answer is found in the leading case for the proposition that jurisdiction may be asserted in respect of a non-related cause of action where the foreign corporation is conducting some corporate activity in the forum state, Perkins v. Benquet Consol. Min. Co., supra. There a Philippines mining corporation was held suable in Ohio, within due process limitations, when its president was temporarily conducting a "continuous and systematic," but limited part of its executive and financial management in that state because of the interruption of its mining business in the Philippines incident to World War II (342 U.S., at pp. 445, 447-448, 72 S.Ct. 413). These activities were regarded as "sufficiently substantial and of such a nature" as to permit (but not compel) Ohio to assert jurisdiction, if that state chose to do so (Id., at p. 447, 72 S.Ct. 415).
In the instant case, by contrast with Perkins, we have in the forum state the continuous and systematic conduct of a part of the regular business of the defendant  solicitation of sales of products  but not the presence of the executive offices (or indeed any corporate offices). Defendant argues that its sales in New Jersey are not "substantial," within the apparent adoption of that adjective as a prerequisite by the authorities cited, for purposes of sustaining jurisdiction of a non-related cause of action. It appears to be recognized that, generally speaking, local contacts must be greater where the suit is on an unrelated cause of action than *152 on one arising from the business done in the state. See Arrowsmith v. United Press International, 320 F.2d 219, 233, 6 A.L.R.3d 1072 (2 Cir. 1963). However, the concept of substantiality is clearly not an absolute, but rather a relative one. The notion is one of sufficient substantiality (given continuity) of the forum business to make it reasonable to exert jurisdiction as against the countering influence of non-relation of the cause of action. This, however, must be measured in the light of the attendant circumstances and any other factors exerting an influence toward justification for assertion of jurisdiction. See infra. New Jersey sales were about 1.4% of national gross. Those effected by New Jersey salesmen were about .8%.[2] However, the New Jersey territory can fairly be regarded as an integral segment of a seemingly nationally dispersed sales operation, with the probability that while no single state segment thereof is essential to defendant's business, all are, in the aggregate.[3]
Jurisdiction was rejected in the following illustrative "non-related cause of action" situations: Fisher Governor Company v. Superior Court, supra (local sales agent was independent and non-exclusive; plaintiff a non-resident); L.D. Reeder Contractors of Ariz. v. Higgins Industries, 265 F.2d 768 (9 Cir. 1959) (defendant had "factory representatives" in state who were independent contractors, not servants or agents; plaintiff a non-resident). Jurisdiction was deemed to meet due process in these "non-related" cause of action cases: Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co., supra (notwithstanding defendant's sales agent was an independent distributor, but relying partly on fact that performance of contract by plaintiff in forum state was with assistance *153 of defendant); Lehn & Fink Products Corp. v. Milner Products Co., supra, n. 2; Jennings v. McCall Corporation, 320 F.2d 64, 67 (8 Cir. 1963) (dictum); Volkswagen Interamericana, S.A. v. Rohlsen, 360 F.2d 437 (1 Cir. 1966) (close control by defendant over resident distributor).
We proceed to the second issue mentioned above  the significance of the factors of the contemplated performance of the contract in suit in New Jersey and plaintiff's domiciliary status here.
Restatement of Law 2d, Conflict of Laws (1967 Proposed Official Draft), § 49 reads:
"(2) A state has power to exercise judicial jurisdiction over a foreign corporation which has done, or has caused to be done, an act in the state as to any cause of action not in tort [tort situations are covered in subsection (1) of this section][4] arising from the act unless the nature of the act and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable."
The commentary on the foregoing is covered in the Reporter's Note to § 36. The comment on subsection (2) of § 36 says, in partial explanation:
"A state is naturally interested in all acts done within its territory. There will usually be judicial jurisdiction over an individual who does, or who causes to be done, in the state an act, even though it is not claimed to be tortious, as to causes of action arising from the act. This is true for the reason, among others, that a heavy burden may be imposed upon a local inhabitant if he is compelled to litigate without the state a claim based upon an act done within the state, whether the act is a tort, a breach of contract or something else. (Emphasis added.)

* * * * * * * *
Further:
"Whereas a state may exercise judicial jurisdiction over a nonresident individual who does a tortious act within its territory, *154 there will be rare occasions when a state may not exercise judicial jurisdiction over the perpetrator of some other sort of act. Such jurisdiction will exist unless the state's interest in, and relationship to, the actor and the act is so slight as to make the exercise of such jurisdiction unreasonable.
Whether an exercise of judicial jurisdiction on the basis of an act done, or caused to be done, in the state would be reasonable depends upon the facts of the case. The principal factors to be considered are the nature and quality of the act, the extent of the relationship of the state to the defendant and to the plaintiff and the degree of inconvenience which would result to the defendant by being forced to stand suit in the state on the particular cause of action."
In the Reporter's Note to subsection (2) is a supporting illustrative reference, inter alia, to the Arizona statute which provides for the exercise of judicial jurisdiction over "a * * * person * * * which [sic] has caused an event to occur in this state out of which the claim * * * arose." Rule 4(e) (2), Rules of Civil Procedure, 16 Ariz. R.S. We add, in more pointed reference to the precise type of "event" caused by defendant in this State, Tennessee's recent "long-arm" statute (Tenn. Pub. Acts 1965, ch. 67) which vests jurisdiction over non-residents as to any claim for relief arising from "* * * (e) Entering into a contract for services to be rendered or for materials to be furnished in this State," discussed in 18 Vanderbilt L. Rev. 1484, 1500 (1965); and Minnesota's 1961 statute which allows jurisdiction in an action on a contract "to be performed in whole or in part by either party in Minnesota." Minn. Stat. Ann. § 303.13, subd. (1), (3) 1961, discussed in Note, 50 Minn. L. Rev. 946 (1966).
The Minnesota provision quoted was held constitutionally applied in Paulos v. Best Securities, Inc., 260 Minn. 283, 109 N.W.2d 576 (Sup. Ct. 1961), in relation to a stock purchaser's action against a New York seller, the sale having been effected by telephone and mail. There, performance by the plaintiff in Minnesota by mailing the payment for the stock was regarded as satisfying the statute. In Haldeman-Homme Mfg. Co. v. Texacon Industries, Inc., supra (236 F. Supp. 99), the same statute was held not offensive to due *155 process in relation to an action against a Texas seller of a going business, where the contract called for its partial performance in Minnesota by the making by the purchaser of post-sale audits of the business done which could affect the purchase price. The court also referred to the fact that the sale contemplated the moving of the business to Minnesota, "with all the attendant effects on that state's economy and citizens" (at p. 102) (but the base sale price was only $18,000).
The Restatement, 2d, section quoted above and the Arizona and Minnesota statutes evidence the conception that a foreign corporation entering into a contract contemplating significant activities or effects in another state is prima facie reasonably subjected to the jurisdiction of that state in an action by a citizen thereof on a claim arising out of the contract. We think plaintiff in the instant case makes a respectable showing for subsumption of jurisdiction here under that doctrine, even apart from the factor of the weight of the contacts represented by defendant's unrelated sales activities here. Defendant, by the negotiation of the contract here involved, did put into motion the machinery of plaintiff's research organization in Newark, involving the culling and analysis of its some 2,000 card-indexed prospects in the health and allied fields to find potential purchasers of the Phar-Med business, and the likelihood of extensive communication toward that end by plaintiff with such prospects by mail and telephonic communication effected in and out of the Newark office. It would seem not at all unreasonable for New Jersey to afford its corporate citizen a remedy in its own courts against an asserted foreign defaulter on a contract entailing such local effects.
While the record does not indicate what witnesses outside its own organization defendant will have to produce at the trial in this case, it would seem that the whole trial can be conducted within a short span of time and that the relatively close proximity between Ohio and New Jersey in terms of modern travel will minimize any burden on the defendant. *156 Obviously the burden will not exceed that which would exist were defendant sued in Delaware, where it is domiciled.
We deem it unnecessary to explore the significance of defendant's relationship to its parent corporation Rohm & Haas. That probably is not weighty, the activities of the two corporations being wholly distinct.
We conclude that the combined effect of defendant's commercial penetration of New Jersey to the extent indicated above, of the relation of the contract sued upon to significant effects envisaged in its negotiation to take place in this State, of the interest of this State in affording a forum to one of its citizens, and of the relative convenience and inconvenience to the parties of litigating this claim in New Jersey rather than in Ohio or Delaware  conduces to the view that acceptance by this State of jurisdiction in this case is consonant with the criteria of substantial justice, fair play and reasonableness which underlie due process. The motion to dismiss should not have been granted.
Judgment reversed.
NOTES
[1] See Note, 56 Columbia L. Rev. 395, 404-408 (1956).
[2] Compare Lehn & Fink Products Corp. v. Milner Products Co., 117 F. Supp. 320 (D.C.S.D.N.Y. 1953), where local jurisdiction was sustained on the basis of 1% local sales (plus a "desk-space" office, local sales manager and a warehouse).
[3] Query: Could defendant restrict its amenability to suit on non-related causes of action to Ohio if its sales were dispersed over 49 other states in none of which, alone, its locally generated business could be described as "substantial"?
[4] Actions arising out of torts involve entirely extraneous considerations. See Roland v. Modell's Shoppers World of Bergen Cty., supra., passim.