117 N.J. Super. 52 (1971)
283 A.2d 551
LITTON INDUSTRIAL SYSTEMS, INC., PLAINTIFF,
v.
KENNEDY VAN SAUN CORPORATION (NOW OR FORMERLY ALSO KNOWN AS KENNEDY VAN SAUN MANUFACTURING AND ENGINEERING CORPORATION), DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 26, 1971.
*54 Mr. Archibald S. Alexander, Jr. appeared for plaintiff (Messrs. Lowenstein, Sandler, Brochin, Kohl and Fisher, attorneys).
Mr. John J. Hanlon, Jr. appeared for defendant (Messrs. Milton, Keane and De Bona, attorneys).
*55 DOAN, J.C.C. (temporarily assigned).
This is an action in breach of contract by a Delaware corporation (Litton) with its main offices in Delaware, but which also has offices in Totowa, N.J. under the name of its division, Hewitt-Robins Inc., against another Delaware corporation (Kennedy Van Saun), with offices only in Delaware. Both are authorized to do business in this State and such business appears in both instances to be substantial.
The facts as uncontroverted in the pleadings to date are these: On December 27, 1968 plaintiff and defendant entered into a contract under the terms of which defendant was to manufacture and deliver certain steel rotary elevators, the first of which was to be delivered to plaintiff on June 15, 1969, with time of the essence. Litton, at that time, was obligated to ship said elevators to another of its subsidiaries. Erie Marine Division of Rust Engineering, which was in turn obligated to ship to Bethlehem Steel. The first elevator was not delivered by defendant until September 25, 1970, which Litton claims is a substantial breach and for which it claims damages in the amount of $50,000, and its subsidiary, Erie Marine, claims of plaintiff damages of $1,044,000 for alleged loss of profits by preempt of yard space. Bethlehem Steel also claims expenses from Erie who, in turn, seeks reimbursement from plaintiff therefor.
Kennedy Van Saun, by way of answer, admits the contract of December 27, 1968, but alleges that under that contract Litton supplied plans, drawings, and specifications for the elevator which proved faulty and led to impossibility of performance. It appears from the affidavit of Edwin Stebbins (purchasing manager of Robins Engineers and Constructors, part of Hewitt-Robins) that their plans and specifications were drawn up in Hewitt-Robins' offices in Totowa and sent to Kennedy Van Saun from there. The records of these plans and specifications remain at the Hewitt office in New Jersey. Defendant Kennedy Van Saun further alleged in its answer that the contract was amended on September 12, 1969, changing the plans and specifications, *56 setting a new time for performance and relieving Kennedy of all liability under the prior contract. Kennedy also claims that subsequent to the amended contract Litton caused further delay by submitting eight change orders at various times through the following year. Lastly, defendant has preserved its jurisdictional objections in its answer and has moved within the time limit required by R. 4:6-3.
Kennedy Van Saun started the series of actions surrounding this litigation when it filed a complaint against Litton in the United States District Court for the Middle District of Pennsylvania on March 25, 1971 for monies due on the contract. That action was dismissed on June 16, 1971 by stipulation of counsel, both parties agreeing that the court lacked jurisdiction because there was no diversity of citizenship. Prior to this dismissal Litton had started the current action here in New Jersey on May 14, 1971. Not to be outdone, Kennedy countered by commencing another action in Pennsylvania on June 6, 1971, this time in the Common Pleas Court for Montour County  this also prior to the federal court dismissal. This state action in Pennsylvania appears to be dormant. According to the affidavit of Russell J. O'Malley (representing Litton in the Pennsylvania action) Litton has yet to file an answer, the time for which had been extended until August 11, 1971. By contrast, this action in New Jersey is alive and thriving; an answer has been filed, defendant and plaintiff have exchanged notices to take depositions, plaintiff has served interrogatories and four letters have passed between the parties regarding the taking of depositions. Service was made in New Jersey on Kennedy Van Saun by serving the Corporation Trust Co., Kennedy's registered agent for the service of such process designated under N.J.S.A. 14A:4-1.
Defendant moves to dismiss the complaint on the grounds that the forum is inconvenient and that service on the registered agent did not give this court jurisdiction of a cause of action allegedly unrelated to the activities of defendant in the State of New Jersey.

*57 I
In support of its jurisdictional objection defendant cites Sielcken v. Sorenson, 109 N.J. Eq. 397 (Ch. 1931), and Kane v. Essanay Film Mfg. Co., 98 N.J.L. 363 (Sup. Ct. 1923), the former involving substituted service on the Commissioner of Banking and Insurance, and the latter involving service upon the Secretary of State on behalf of a foreign corporation. Neither case is relevant to the problem at hand, where we have service on a registered agent specifically designated by the foreign corporation expressly for that purpose. More importantly, both were decided long before the expanded jurisdictional concepts espoused in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
Sielcken and Kane stood for the proposition that substituted service on the in-state agent for service was only available for causes of action arising out of the business activities done by the corporation in New Jersey and was not sufficient for unrelated causes of action.
Assuming, for the sake of argument, that the contract sued on herein was in fact unrelated to the defendant's business activities in New Jersey, and even assuming that defendant had not designated Corporate Trust Co. as its agent for service, and service had been made by registered mail (a supposedly less effective mode of service), we would have little trouble sustaining jurisdiction in this case.
In sustaining long-arm jurisdiction over foreign corporations admittedly doing business in this State we are circumscribed only by the requirement that the corporation be afforded due process. In our search for a constitutional basis upon which jurisdiction may be founded we are reminded once again of the careful statements of Chief Justice Stone in International Shoe, supra:
* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the *58 territory of the forum, he have certain minimum contacts with it, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."
See McGee v. International Life Insurance Co., supra, where the court noted that "a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." See also Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), and Justice Jacobs' discussion in J.W. Sparks & Co. v. Gallos, 47 N.J. 295, 298-304 (1966).
In our own jurisdiction these limitations of "minimal contacts" and "substantial justice," imbedded in the International Shoe doctrine and in our own long-arm statute, have been interpreted as vesting our courts with jurisdiction over foreign corporations to the outer limits permitted by due process. Roland v. Modell's Shoppers World of Bergen Cty., 92 N.J. Super. 1 (App. Div. 1966); Avdel Corporation v. Mecure, 58 N.J. 264 (1971).
Consistent with this interpretation of the limits of due process, our courts have been quick to sustain jurisdiction where the cause of action sued on arises out of the business being done in this state by the foreign corporation and where there have been sufficient minimal contacts present to suggest the reasonableness of subjecting the corporation to suit in this State. Corporate Development Specialists, Inc. v. Warren-Teed Pharmaceuticals, Inc., 102 N.J. Super. 143 (App. Div. 1968); Roche v. Floral Rental Corp., 95 N.J. Super. 555 (App. Div. 1967).
Where, however, the cause of action has been unrelated to the business activities carried on within the State, the jurisdictional basis required has gone beyond the mere "minimal contacts" test. In such a situation it has been held that before subjection to jurisdiction can be seen as "reasonable," defendant's activities in the State must be both "continuous" and "substantial." In a word, local contacts *59 must be greater where the cause of action is unrelated. Corporate Dev. Spec., Inc. v. Warren-Teed Pharm, supra; Arrowsmith v. United Press International, 320 F.2d 219, 6 A.L.R.3d 1072 (2 Cir.1963). See also, Restatement, Conflict of Laws 2d, § 47.
This concept of "substantiality" is a relative one. It really means sufficient substantiality (with continuity) of the forum business to make it reasonable to exert jurisdiction as against the countering influence of nonrelation of the cause of action. In the Warren-Teed case the Appellate Division upheld jurisdiction where the foreign corporation had local sales in New Jersey constituting 1.4% of its national gross, which sales the court held to meet the test of "substantiality" where the contract sued on was unrelated. In Lehn & Fink Products Corp. v. Milner Products Co., 117 F. Supp. 320 (D.C.S.D.N.Y. 1953), local jurisdiction was sustained in an unrelated cause of action on the basis of only 1% local sales (plus a "desk-space" office, a local sales manager and a warehouse).
Perhaps reaching those outer limits of due process referred to in the Modell's Shoppers World case, supra, the Supreme Court of the United States in Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), said that an Ohio court could properly take jurisdiction where a Philippine corporation had temporarily halted its activity in the Philippines due to the Japanese occupation and its president had set up an office in his home in Ohio out of which he carried on some internal corporate business, including banking and a few directors' meetings. The court felt that jurisdiction would be nonviolative of the due process clause even though the corporation owned no property in Ohio and had entered into no contracts in that state. Such activity was held to meet the requirements of "substantiality" and "continuity" where the cause of action was unrelated.
Defendant Kennedy Van Saun admits to doing business in New Jersey and nowhere does it state that this business *60 activity is neither substantial nor continuous. It merely alleges that the contract here sued upon is unrelated to that activity, an allegation which alone is insufficient to defeat the jurisdiction of this court. Indeed, it has given evidence of the continuity and substantiality of its activities in this State by its compliance with N.J.S.A. 14A:4-1 which, while not conclusive, has been seen as a helpful test in determining the reasonableness of subjecting the foreign corporation to jurisdiction. Perkins v. Benguet Consolidated Mining Co., supra, 72 S.Ct. at 418. This indication of the substantiality of defendant's admitted business activities in this State, in the absence of any allegations to the contrary, is sufficient to sustain the jurisdiction of this court, even assuming that the contract sued on is in fact unrelated to defendant's business activities here.
To this point we have assumed, for the sake of argument, that service was made on defendant by a less effective mode of service than service on defendant's designated registered agent in New Jersey, arguing that if the lesser could be sustained, the more effective would certainly be proper. We have already seen that substituted service would have been proper under the circumstances herein. We turn now to the effect of the defendant's designation of an agent for the service of process on the reasonableness of this court's taking jurisdiction and on the issue of the alleged insufficiency of process.
The New Jersey statute, N.J.S.A. 14A:4-1, makes it clearly evident that, preliminary to authorization to transact business in New Jersey is the appointment of an agent upon whom process against the corporation may be served. There is no qualification upon this obligation. The United States Supreme Court, in Neirbo v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437, decided that designation of an agent in a state for service of process constituted consent to be sued in the federal courts of that state, and was tantamount to a waiver of the privilege accorded by section 51, 28 U.S. *61 C.A. § 112, providing that a civil suit in Federal District Court shall be brought only in the district of residence of either plaintiff or defendant where jurisdiction is founded on diversity of citizenship. In Randolph Laboratories v. Specialties Development Corp., 62 F. Supp. 897 (D.C. N.J. 1945), compliance with the New Jersey statute was seen as consent by the foreign corporation to be sued in the courts of New Jersey, both state and federal. See also Da Cunha v. Grasselli Chemical Co., 46 F. Supp. 28 (D.C.N.J. 1942), construing the New Jersey statute in the same manner.
The Supreme Court has also commented on the effect of service on an in-state agent, again in Perkins v. Benguet Consolidated Mining, supra:
Today if an authorized representative of a foreign corporation be physically present in the state of the forum and be there engaged in activities appropriate to accepting service or receiving notice on its behalf, we recognize that there is no unfairness in subjecting that corporation to the jurisdiction of the courts of that state through such service of process upon that representative. [72 S.Ct. at 418]
This was applied to the action in that case, which was unrelated to the foreign corporation's business activities in that state.
Under the foregoing authorities, this court has no hesitation in finding that the defendant's designation of an agent for the service of process under N.J.S.A. 14A:4-1 amounted to a consent by defendant to be sued in the state courts of New Jersey, and that service on said authorized representative was reasonable and sufficient even if it be established that the contract here sued on was unrelated to defendant's New Jersey business activities, a proposition yet to be proved.
Even were it to be proved that defendant's business activities in this State are so insubstantial as to provide no basis for jurisdiction in an unrelated cause of action, the events surrounding the performance of this contract alone *62 would be enough to sustain jurisdiction in accordance with due process. Defendant admits in its answer that its performance under the contract depended on plans and specifications submitted by plaintiff. Plaintiff contends, in its answering brief to this motion, that the plans and designs for the elevator originated in plaintiff's New Jersey plant and that these plans were either mailed to defendant from New Jersey or hand delivered to defendant's representatives in New Jersey. These contentions are not denied by defendant. In addition, since defendant admits that the order form for the elevator was received from plaintiff's New Jersey plant, it is safe to assume that defendant contemplated that a part of the performance of this contract would occur in New Jersey. By this contract then, defendant set in motion various activities at Litton's plant in New Jersey, which activities were contemplated by the defendant. The significance of the contemplated performance of part of the contract in suit in New Jersey is covered by the Restatement, Conflict of Laws 2d, § 49, which reads:
(2) A state has power to exercise judicial jurisdiction over a foreign corporation which has done, or has caused to be done, an act in the state as to any cause of action not in tort arising from the act * * *.
The commentary to this section is in the Reporter's note to § 36 which explains:
A state is naturally interested in all acts done within its territory. There will usually be jurisdiction over an individual who does, or who causes to be done in the state an act, even though not claimed to be tortious, as to causes of action arising from the act. This is true for the reason that a heavy burden may be imposed upon a local inhabitant if he is compelled to litigate without the state a claim based upon an act done within the state, whether the act done is a tort or a breach of contract." [Emphasis added]
Here, defendant bases an affirmative defense arising out of allegedly faulty plans prepared in New Jersey by plaintiff. In addition, it is suing plaintiff in Pennsylvania for monies *63 allegedly due him on a contract partly to be performed in New Jersey, and, if enjoined from pursuing that action, will most likely set up a plea for affirmative relief in the current action by way of counterclaim. Since defendant entered into a contract which it knew would have substantial business effects in this State, and since an affirmative defense is based in fact on acts caused to be done in this State, we have no difficulty holding defendant amenable to suit here, solely on the basis of this one transaction. Kennedy Van Saun purposely availed itself of the opportunity to engage in a commercial transaction involving activities in this State; it should not now be heard to complain that this court lacks jurisdiction. See Avdel Corp. v. Mecure, 58 N.J. 264 (1971), and Corporate Dev. Spec., Inc. v. Warren-Teed Pharm., Inc., supra.
Lastly, defendant argues that this court lacks jurisdiction because the contract was executed in Pennsylvania and consequently should be governed by Pennsylvania law. Such an argument has no bearing on the jurisdictional question since from the preceding discussion it can be readily seen that this State has sufficient minimal contacts with defendant to satisfy the requirements of due process. Resin Research Lab., Inc. v. Gemini Roller Corp., 105 N.J. Super. 401 (App. Div. 1969). The question of where the contract was executed would only have relevance on the issue of what law should be applied on the merits once this court already has jurisdiction. Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (Ct. App. 1954); W.H. Barber Co. v. Hughes, 223 Ind. 570, 63 N.E.2d 417 (Sup. Ct. 1945); Bernkrant v. Fowler, 55 Cal.2d 588, 12 Cal. Rptr. 266, 360 P.2d 906 (Sup. Ct. 1961), see also, Restatement, Conflict of Laws 2d, § 332 and comments thereto.
In summary, then, it has been seen that regardless of whether this cause of action arose out of defendant's continuous and substantial business activities in this State, this contract alone is sufficient to provide the court with the *64 "minimal contacts" needed to meet the International Shoe rule and the requirements of due process. Hence, jurisdiction over the defendant is sustained.

II
Having sustained jurisdiction over defendant Kennedy Van Saun, we now pass to defendant's second contention, that this court should refuse to take jurisdiction under the doctrine of forum non conveniens.
The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when such jurisdiction is authorized. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Traditionally in our Anglo-American law, defendant can be sued wherever he can be served. An individual may be served far from his home while he is transiently in a state. The cause of action may have nothing to do with the state where service is made, and plaintiff may be, and oftimes is, a nonresident of that state. Where foreign corporations are involved, suit may be brought wherever the foreign corporation has been certified to do business, which includes appointing an agent for the service of process, or wherever the corporation does business or, in many cases, where it has done an isolated act. See Cheatham et al., Conflict of Laws (5th ed. 1964), 235-237.
Such a varied menu of forums in which a plaintiff may sue has led to a well-known practice in our jurisprudence called "forum shopping." A plaintiff may make the choice to harass a defendant, in hopes of perhaps getting a better settlement or a higher jury verdict, by bringing the action in a forum where it is inconvenient and oppressive for defendant to litigate. Plaintiff may, of course, have wholly legitimate reasons for his choice of forum, such as convenience of witnesses. In order to combat the use of this practice, the doctrine of forum non conveniens has been developed over the last 50 years by many courts, and applied *65 in situations where there is no substantial or legitimate basis for the plaintiff's choice of forum. See "The Doctrine of Forum Non Conveniens in Anglo-American Law," 29 Col. L. Rev. 1 (1929); Dainow, "The Inappropriate Forum," 29 Ill. L. Rev. 867 (1934); Ehrenzweig, Conflict of Laws, 120-137 (1962).
Standards for the application of the doctrine of forum non conveniens vary to some degree in the different jurisdictions, see 90 A.L.R.2d 1109 (1963), yet most generally follow the considerations cited by Justice Jackson in Gulf Oil Corp. v. Gilbert, supra:
An interest to be considered * * * is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.
By way of a cautionary note Justice Stone added, unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."
Our courts in New Jersey and elsewhere have heeded this word of caution and have only rarely granted a dismissal on this ground in exceptional cases where the oppressiveness of defendant's litigating in the forum has been manifest. Two such cases are Gore v. United States Steel Corp., 15 N.J. 301 (1954), cert. den. 348 U.S. 861, 75 S.Ct. 84, 99 L.Ed. 678 (1954), and Semanishin v. Metropolitan Life Ins. Co., 46 N.J. 531 (1966), and they provide excellent examples of the kind of circumstances in which the doctrine was meant to apply. In Gore an Alabama resident sued a New Jersey corporation for death resulting from an accident on the corporation's premises in Alabama. The Supreme Court (by Justice Jacobs) held that since the corporation was amenable to process in Alabama and plaintiffs and all witnesses resided in Alabama, and since interpretation *66 of Alabama statutes was involved, the action should be tried in Alabama. There it was noted that New Jersey had no real connection with the controversy and that "the distance between Alabama and New Jersey is substantial and the expense and inconvenience of having a New Jersey trial would burden all of the parties and their witnesses."
In Semanishin, it was also painfully evident that the controversy to be litigated had absolutely nothing to do with the State of New Jersey. This was an action by European residents against a New York Life insuror to collect proceeds of a number of New York residents' life policies. The contracts of insurance were not made in New Jersey, none of the insureds ever lived in New Jersey, none of the plaintiffs or witnesses were New Jersey residents, and defendant corporation was not a New Jersey corporation. The only slight connection was that defendant was licensed to do business in New Jersey and could be served with process in this State. This was held not enough to defeat the application of the doctrine of forum non conveniens.
The considerations motivating the decisions in these two extraordinary cases have little bearing on the facts in this case. Here, as we have already established, we have a suit on a contract that involved substantial performance in the State of New Jersey; at least half of the witnesses are residents of this State; plaintiff corporation, while not technically a New Jersey resident, carries on much business activity here and maintains a large plant under the name of its division, Hewitt-Robins, in which all records of this transaction are currently being kept. We see sufficient factual differences between this case and the two cases just discussed to distinguish them and eliminate them from our discussion.
In a small number of other New Jersey cases the doctrine of forum non conveniens has primarily been applied in actions based on out-of-state, nonstatutory torts involving personal injuries, where defendant is not a New Jersey resident and the bulk of witnesses are also nonresidents. See Vargas *67 v. A.H. Bull Steamship Co., 25 N.J. 293 (1957), cert. denied 355 U.S. 958, 78 S.Ct. 545, 2 L.Ed.2d 534.
On the other hand, actions based on contract in this and other jurisdictions appear to be allowed to proceed to trial in the forum chosen by the plaintiff, even where the relationship of the action and of the parties to the state are more tenuous than in the case at hand. This is true even where both parties are nonresidents. See Amercoat Corp. v. Reagent Chem. & Research, Inc., 108 N.J. Super. 331 (App. Div., 1970); James H. Rhodes & Co. v. Chausovsky, 137 N.J.L. 459 (Sup. Ct. 1948); Quigley Co. Inc. v. Asbestos Ltd., Inc., 134 N.J. Eq. 312 (1944), J.W. Sparks & Co. v. Gallos, 47 N.J. 295 (1966); Cofrode v. Wayne County Circuit Judge, 79 Mich. 332, 44 N.W. 623 (Sup. Ct. 1890); Reeve v. Cromwell, 227 App. Div. 32, 237 N.Y.S. 20 (App. Div. 1929).
Defendant, in its brief in support of this motion, argues that plaintiff, Litton, should be given nonresidency status in our considerations under forum non conveniens. Although the court is not in complete agreement with this view, we will grant it for the sake of argument since, in the court's view, the nonresidency of both parties will not change the determination of this motion.
In Standard Surety & Casualty Co. v. Caravel Ind. Corp., 128 N.J. Eq. 104 (Ch. 1940), a case more appropriate to our discussion since it involved a contract action, a New York corporation sued another New York corporation and individual New York residents for specific performance of one covenant of an indemnity contract. None of the parties or any of the witnesses were residents of New Jersey and both corporations had done all of their business in New York. The sole connection with the action was that defendant corporation had stored its equipment in Newark for a while after it had discontinued its business in New York, and its president had been served in New Jersey. There the court recognized that its acceptance of jurisdiction was wholly discretionary because of the nonresidency of the parties *68 and laid down guidelines for the application and consideration of forum non conveniens when both parties are nonresidents, among them: (1) the fact that defendant might be subject to unnecessary inconvenience and expense in being compelled to litigate far from home; (2) the difficulty of procuring the attendance of witnesses in a foreign forum, and (3) the fact that a judgment might be unenforceable if defendant had no property in this State. Citing the principle that "the court usually acts when it has jurisdiction unless cause appears for declining to do so," the court sustained jurisdiction on the grounds that none of the above considerations were seen to exist.
In a similar case, Quigley Co., Inc. v. Asbestos Ltd., Inc., 134 N.J. Eq. 312 (Ch. 1944), aff'd 135 N.J. Eq. 460 (E. & A. 1944), we find facts remarkably familiar to the parties currently at bar. There a New York corporation sued another New York corporation for specific performance of a contract executed in New York and for an injunction restraining defendant from violating certain terms of the contract. There, as here, both parties were licensed to do business in New Jersey and there, also, service was made by serving defendant's registered agent. Defendant made exactly the same jurisdictional objection as here  that the right to serve process on the registered agent of a foreign corporation doing business in this State existed only with respect to acts which arose out of the transaction of business in this State  a contention which was, in turn, rejected by that court as it is here. Defendant also contended that all of the parties and witnesses were nonresidents; that all of its records of the transaction were in New York, and that the sole purpose of bringing the litigation in this State was to subject defendant to hardship, expense, inconvenience and difficulties, which could be avoided if suit were brought in New York. In stating these to be insufficient grounds for declining to assume jurisdiction the court noted that both parties were actively engaged in the manufacturing business in this State, with rights and *69 liabilities defined by our statutes, and were so engaged when the contract sued on was entered into. More importantly for our considerations here, the court stated:
When defendant obtained a license to engage in business in this state and had business relations with the plaintiff, defendant voluntarily subjected itself to the liability of being sued in the courts of this state and to all the hardship and inconvenience which usually attend trial in any court of a law suit of importance * * *.
See in accord, Doctor v. Desmond, 80 N.J. Eq. 77 (Ch. 1912). Lastly, the court also noted the general rule in forum non conveniens cases that "unless a compelling reason appears that the parties should be relegated to the courts of their domicile, discretion in all transitory actions is usually exercised, especially in actions arising out of contracts, in favor of retaining jurisdiction." See also James H. Rhodes & Co. v. Chausovsky, supra, a suit by a New York corporation against an Argentine resident on a contract executed in New York, where the Supreme Court, in retaining jurisdiction, also stated that "Jurisdiction is rarely declined where the action arises out of contract." Also, see in accord with the general tendency to retain jurisdiction in contract actions in other states: Hagen v. Viney, 124 Fla. 747, 169 So. 391 (Sup. Ct. 1936); Trojan Engineering Corp. v. Green Mountain Power Corp., 293 Mass. 377, 200 N.E. 117 (Sup. Jud. Ct. 1936); Marks v. Fireman's Fund Ins. Co., 109 F. Supp. 800 (S.D.N.Y., 1953); Rhodes v. Barnett, 117 F. Supp. 312 (S.D.N.Y. 1953).
Defendant cannot escape this great weight of authority compelling us to retain jurisdiction in this contract action. More specifically, it has not sought to distinguish the Quigley case or to argue against the reasonableness of its assertion that a corporation which has designated an agent for the service of process in a state in which it is doing business should not be deemed to have consented to being sued there and to have been put on notice of whatever hardship and inconvenience would have to be indured there *70 in defending such suits. We may well ask defendant why it designated this agent for service of process if it felt it would be inconvenient to be sued here in the first place? Defendant has not demonstrated how this action may be different from any other action it has defended or will defend in this State, or how it would be any more inconvenient. It has stated that all its witnesses are residents of Pennsylvania but gives us no list of their names or addresses and does not say why we should consider the inconvenience of its witnesses of any greater moment than the inconvenience of Litton's witnesses, who are all New Jersey residents, should Litton be forced to litigate in Pennsylvania. Kennedy has also failed to demonstrate how it would be easier to demonstrate how "lamellar tearing" occurs in a Pennsylvania court rather than in a New Jersey court. In addition, all of Litton's records of the transaction are within the jurisdiction of this court and it would appear equally as inconvenient for Litton to litigate in Pennsylvania as it would for Kennedy Van Saun to litigate here. A mere showing of inconvenience on the part of a defendant is not enough; it must also be established that dismissal of the action will cause no serious inconvenience to the plaintiff. Amercoat Corp. v. Reagent Chem. & Research Inc., supra, 108 N.J. Super. at 347; Starr v. Berry, 25 N.J. 573 (1958). Defendant has not met that burden in this case. Nor has it met the burden established in Gore v. United States Steel Corp., supra, 15 N.J. at 311, and approved in Starr v. Berry, supra, that, "the plaintiff's choice of forum will be permitted to control except where the circumstances decisively establish that there is available another forum where trial will best serve the convenience of the parties and the ends of justice." See in accord with this test, Marshall v. Geo. M. Brewster & Son, Inc., 37 N.J. 176, 188 (1962).
Lastly, defendant cites as another reason for the application of forum non conveniens the burden on the taxpayer and our crowded court calendars when controversies *71 having no connection with this state are allowed to go to trial. These considerations were noted in Gore v. United States Steel Co., and Semanishin v. Metropolitan Life Ins. Co., supra, two cases already distinguished by this court as resting on facts having no relation to this case. It is sufficient for us to quote the rejoinder to this argument by Chief Justice Weintraub in Starr v. Berry, supra:
* * * prior decisions in this State to indicate that the taxpayers' interest is more a reason for the existence of the doctrine than an operative fact in determining whether to apply it in a given case. We incline to the view that if as between the litigants justice dictates that plaintiff's choice of forum be upheld, such should be the result notwithstanding its impact upon the economy of the judicial system. [25 N.J. at 588]
In view of the substantial contacts existing between this State and the parties to this action, and in view of the fact that defendant has availed himself of the opportunity to do business in this State, and has voluntarily created a procedure by which he may be sued here, this court does not deem it unfair or oppressive to submit defendant to litigation here arising out of a contract invisioning substantial activities in this state. Moreover, there is certainly no special inconvenience to defendant, since the two states involved are contiguous. Avdel Corp. v. Mecure, 58 N.J. 264 (1971). Under the circumstances, this court deems it proper that it exercise its discretion and retain jurisdiction of this case.
Restraint will issue against the further prosecution of the Pennsylvania action, and leave is granted to defendant to serve and file a counterclaim.