CENTRAL PENN NATIONAL BANK, PLAINTIFF-RESPONDENT,
v. EUGENE J. ALTEN AND MARLENE ALTEN,
DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued May 8, 1984—Decided June 11, 1984.

Before Judges ANTELL and JOELSON.

*Robert G. Millenky* argued the cause for appellants (*Melnik, Morgan & Klein,* attorneys).

*William C. Todd, III* argued the cause for respondent (*Tort, Jacobs, Gross & Todd,* attorneys).

The opinion of the Court was delivered by

JOELSON, J.A.D.

Plaintiff, a Pennsylvania banking association, obtained a Pennsylvania judgment well in excess of $3,000,000 against defendants, Pennsylvania residents. Plaintiff then in May, 1979, instituted an action on the judgment in New Jersey and obtained an *ex parte* order for a writ of attachment against the real and personal property of defendants located in New Jersey. For reasons which were not fully explained, the writ of attachment was not executed, but instead plaintiff consented to the writ being vacated. A long and tortuous procession of legal proceedings ensued, including an appeal to us, which was decided on February 25, 1981. Without engaging in a recital of all the events thereafter, suffice it to say that plaintiff served defendants in Pennsylvania by mail pursuant to *R.*4:4–4(c)(3), and that the trial court on June 30, 1983 ordered and adjudged "that plaintiff has properly obtained in personam long-arm jurisdiction over defendants Eugene Alten and Marlene Alten," and further ordered summary judgment in the total amount of $3,836,181.46 together with costs and post judgment interest. This is defendants' appeal from that order. We affirm.

In concluding that plaintiff had established that defendants had sufficient New Jersey contacts to justify long-arm jurisdiction, the trial judge acknowledged in his oral opinion that those contacts were unrelated to defendants' transactions with plaintiff. However, he stated that those contacts were more than the minimum contacts that would be acceptable for the invocation of long-arm jurisdiction if such contacts were related to the

subject matter of the litigation. Thus, he reviewed defendants' New Jersey contacts in detail and correctly found that those contacts were "... continuous in the sense of extending over a substantial and significant portion of time and [were] substantial contacts." *See Perkins v. Benguet Consolidated Mining Co.*, 342 *U.S.* 437, 445–448, 72 *S.Ct.* 413, 418–420, 96 *L.Ed.* 485 (1952); *Corporate Dev. Spe., Inc. v. Warren-Teed Pharm., Inc.*, 102 *N.J.Super.* 143, 150–151 (App.Div.1968), certif. den. 52 *N.J.* 535 (1968); *Litton Ind. Systems v. Kennedy Van Saun Corp.*, 117 *N.J.Super.* 52, 59 (Law Div.1971). The record discloses that defendant, Eugene Alten, a Pennsylvania attorney, was the registered agent of two New Jersey corporations which had offices in Atlantic City. He was a director of one and the president of the other. He has engaged in substantial real estate transactions in New Jersey either on his own behalf or on behalf of one of these corporations, Atlantic Riviera Hotel Inc. Furthermore, defendant Eugene Alten and his wife, Marlene, owned property in Ventnor, New Jersey, which from time to time they have occupied as summer residents. That property was conveyed in 1973 to Marlene Alten as trustee for the Alten children, in which capacity she apparently still serves. Additionally, two automobiles driven by defendants, although leased, are registered in New Jersey.

Under *R.* 4:4–4, out-of-state service is permitted, "... to the uttermost limits permitted by the United States Constitution." *Avdel Corporation v. Mecure*, 58 *N.J.* 264, 268 (1971); *Accord, Ketcham v. Charles R. Lister, International, Inc.*, 167 *N.J.Super.* 5, 7 (App.Div.1979), certif. den. 81 *N.J.* 339 (1979). When determining these limits, due process requires only that in order to subject a defendant to *in personam* jurisdiction that defendant must have sufficient contacts with the forum such that the maintenance of the action does not offend traditional notions of fair play and justice. *International Shoe Co. v. Washington*, 326 *U.S.* 310, 316, 66 *S.Ct.* 154, 158, 90 *L.Ed.* 95 (1945); *Avdel Corporation v. Mecure*, 58 *N.J.* at 268; *Govan v. Trade Bank & Trust Co.*, 109 *N.J.Super.* 271, 274 (App.Div.

1970). The determination of fairness must be made in accordance with the reality that as interstate movements and transactions have become commonplace, state lines become less relevant to the resolution of ensuing controversies. *Cooke v. Yarrington*, 62 *N.J.* 123, 128 (1973). Defendants do not contest these principles of long-arm jurisdiction, but they emphasize the fact that both parties in the case under review are non-residents of New Jersey. Thus, in the brief submitted on their behalf, defendants assert that "[p]laintiff, a Pennsylvania banking corporation, doing business in Pennsylvania, is not entitled to invoke New Jersey's long-arm rule."

■ In stressing the non-residency of both parties, defendants raise a substantial issue because "... the State's interest in providing a forum for its citizens" has been stated to be a justification for the authorization of long-arm jurisdiction. *Amercoat Corp. v. Reagent Chem. & Research Inc.*, 108 *N.J.Super.* 331, 344 (App.Div.1970). However, it has long been established that New Jersey courts have jurisdiction "... of a suit between non-residents of this state even if the cause of action arose in another state," but that "[w]hether jurisdiction will be exercised is within the discretion of the court, the exercise of which discretion depends on the facts and circumstances present in each particular case." *Quigley Co., Inc. v. Asbestos Limited, Inc.*, 134 *N.J.Eq.* 312, 313 (Ch.1944), aff'd 135 *N.J.Eq.* 460 (E. & A.1944). See also *Standard Surety & Cas. Co. v. Caravel Industries Corp.*, 128 *N.J.Eq.* 104, 105 (Ch.1940) and also *Sielcken v. Sorenson*, 111 *N.J.Eq.* 44 (Ch.1932), where the court exercised its discretion against accepting jurisdiction.

■ We find that the facts and circumstances of this particular case justified the trial judge's approval of long-arm jurisdiction under *R.* 4:4-4(e). In this respect, the nature of the cause of action must be considered. Plaintiff sought the aid of New Jersey so that it could ultimately obtain here the same judgment it had already obtained in Pennsylvania. It desires a judgment which it can docket in New Jersey and eventually

may levy upon here. No other state in the union can afford such relief. As we mentioned above, plaintiff originally instituted its New Jersey action by a writ of attachment, but abandoned that course in favor of an *in personam* action. Under *N.J.S.A.* 2A:26–2, an attachment may issue against property of a defendant "... upon the application of any resident or nonresident plaintiff," and under *N.J.S.A.* 2A:26–2b, one of the grounds for the issuance of attachment is that the defendant be a non-resident of this state, and a summons cannot be served upon him here. However, if defendants have no property in New Jersey there would be nothing to attach, and an *in rem* procedure would not be feasible. As a matter of fact, if defendants have no property here, any judgment that plaintiff might obtain against them would presently be of dubious value. However, plaintiff apparently hopes that because of defendants' extensive contacts in New Jersey, assets belonging to them may be found in the future. That hope does not appear to be entirely groundless in view of the fact that defendants, against whom a Pennsylvania judgment has already been obtained, are opposing so vigorously the institution of a New Jersey action on that foreign judgment. We conclude that because of defendants' substantial and continuous New Jersey contacts, including even part-time residence here, the ends of justice will best be served by permitting plaintiff to obtain its judgment here for whatever benefit it may ultimately derive therefrom. As stated above, plaintiff can in no other state obtain the relief it seeks.

Before concluding, we wish to make it clear that it should be only in an exceptional case such as this one that non-resident parties should be permitted to utilize our courts with regard to an underlying cause of action which did not arise here. Even at a time before our calendars were as crowded as they are now, the risk of opening "... the flood gates of litigation ..." was recognized. *Sielcken v. Sorenson,* 111 *N.J.Eq.* at 48. Furthermore if we thought that the case under review involved "forum shopping" in order to gain a more

advantageous rule of law, our decision would be otherwise. *See Heavner v. Uniroyal, Inc.,* 63 *N.J.* 130, 140 (1973).

Affirmed.